[No. B059841. Second Dist., Div. Seven. July 8, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
MONTE RENE JACKSON, Defendant and Appellant.

1368

## COUNSEL

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Sharon Wooden Richard and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—After a jury convicted appellant of robbery (Pen. Code,[1] § 211), he waived jury regarding three "serious felony" conviction allegations (§ 667, subd. (a)). The trial court found each true. Appellant was sentenced to state prison for a total term of twenty years, the upper five-year term for robbery and 3 five-year consecutive terms for the prior felony convictions. Appellant was credited with 177 custody days. On appeal, appellant contends: (1) the trial court erred in denying his suppression motion (§ 1538.5), (2) insufficient evidence supports one felony conviction allegation, (3) and he is entitled to 178, not 177, days' custody credit. We find the second contention has merit and accordingly we reverse part of the judgment but otherwise affirm the judgment.

### FACTUAL BACKGROUND

There being no insufficiency of evidence claim concerning guilt, the facts may be simply stated.

On January 17, 1991, shortly before 2 a.m., appellant and a female companion approached the victim, Melvin Nelson, in an alley near 21st Street and Magnolia in Long Beach. Appellant had an unlit cigarette in his mouth and asked the victim for a light. The two, appellant and the victim, talked for a few minutes and then the victim turned his back to walk away. Appellant "jumped" the victim, placed his arm around the victim's neck and forced him to the ground. The female ripped the victim's pocket and took his wallet. When a car approached, appellant and the female fled.

The victim called 911 and gave a description of the robbers.

A short time later, not far from the robbery, a deputy sheriff, unaware of the robbery, stopped a car for a traffic violation. When he saw the rear passenger, appellant, try to hide a wallet under the front passenger seat, he retrieved the wallet and found Melvin Nelson's (the victim's) identification.

About an hour later, the victim identified appellant as one of the robbers. He was unable to identify the female driver of the car as the other robber.

---

[1] Unless otherwise noted all statutory references are to the Penal Code.

## DISCUSSION

1. *Appellant contends the trial court erred in denying his suppression motion.*[2]

Appellant's motion to suppress the victim's wallet was heard during[3] trial. The hearing consisted of stipulated testimony[4] and solely involved the issue of standing.

The stipulated facts were the following: an officer stopped a vehicle for a traffic violation at about 2 a.m. He asked the driver for identification but she said she had none. He asked the two passengers for identification but they said they had none. The officer saw the rear passenger, appellant, place a wallet under the front passenger seat. The officer recovered the wallet which contained the victim's (Melvin Nelson's) identification.

■ The trial court found appellant lacked standing to claim that seizure of the wallet violated the Fourth Amendment. Accordingly, the trial court denied appellant's suppression motion. The trial court was correct.

Appellant was merely a guest-passenger in someone else's vehicle and made no claim, possessory or otherwise, regarding the wallet, freshly stolen from the victim, or regarding the *place* from which the wallet was recovered. *Rakas* v. *Illinois* is apposite: "[Appellant's] claims must fail. [He] asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized . . . . [He] made no showing that [he] had any legitimate expectation of privacy in the . . . area under the seat of the car in which [he was] merely [a] passenger[ ]." (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 148 [58 L.Ed.2d 387, 404, 99 S.Ct. 421]. See also *United States* v. *Salvucci* (1980) 448 U.S. 83, 90-91 [65 L.Ed.2d 619, 627, 100 S.Ct. 2547]; *People* v. *Melnyk* (1992) 4 Cal.App.4th 1532 [6 Cal.Rptr.2d 570].)

2. *Appellant contends insufficient evidence supports one felony conviction allegation.*

The information alleged appellant had suffered three felony convictions within the meaning of section 667, subdivision (a). As to the first and third,

---

[2]After counsel for appellant had filed his opening brief, appellant, in propria persona, filed a petition for a writ of habeas corpus. The petition raised the instant contention. We deemed the petition a supplementary brief (order of May 14, 1992, No. B066856). We requested and received additional briefing from both counsel.

[3]Although the motion was untimely (§ 1538.5, subd. (i)), the deputy district attorney acquiesced in having the motion heard during, rather than prior to, trial. We disapprove this practice, which thwarts one of the statute's purposes (*People* v. *Brooks* (1980) 26 Cal.3d 471, 475-476 [162 Cal.Rptr. 177, 605 P.2d 1306]) and misuses judicial resources.

[4]The April 30, 1991, minute order erroneously states the motion "submitted to the Court on the preliminary hearing testimony of officer Schleff. . . ."

both robbery convictions, there is no issue on appeal. As to the second, the information alleged that on or about March 26, 1974, appellant had been convicted of "RESIDENTIAL BURGLARY," a serious felony within the meaning of section 667.

Section 667, subdivision (a) provides in pertinent part that "any person convicted of a *serious felony* who previously has been convicted of a *serious felony* . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction. . . . The terms . . . shall run consecutively." (Italics added.)

Section 667, subdivision (d) states: "As used in this section 'serious felony' means a serious felony listed in subdivision (c) of section 1192.7."

Among the "serious felonies" listed in section 1192.7, subdivision (c) is "burglary of an inhabited dwelling house." (§ 1192.7, subd. (c)(18).)

■ Thus, to sustain the subject felony conviction allegation, the prosecutor had to prove not merely that appellant had been convicted of *burglary* but that the burglary was *"of an inhabited dwelling house."* Absent such proof, the trier of fact was required to find the allegation *not true.*

The occasion for such proof arose immediately after the jury's guilty verdict. Defense counsel told the court "We're going to have a court trial on the priors, your Honor." The prosecutor then advised appellant of his right to have a jury determine the prior felony allegations and counsel then discussed whether the trial should proceed immediately or should be deferred to and be part of the probation and sentence hearing. They decided to have the trial immediately.

Proof at trial consisted of two pieces of evidence. The prosecutor requested the court "to take as evidence the statements made by the defendant while on the stand concerning the priors." The trial court made no response to this request and from all reporter's transcript appearances seems to have ignored it. But even if, despite appearances, the trial court (silently) granted the request, this evidence consisted only of appellant's admission he was "convicted of two *felonies*" in 1974. This evidence did not prove the subject allegation.

The second piece of evidence was People's exhibit 3, seven pages of certified records from the Department of Corrections. Pertinent is page 5, a judgment of conviction stating that on March 26, 1974, Monte Rene Jackson "pleaded guilty in this court of [*sic*] the crime of BURGLARY, in violation of

section 459, Penal Code, of the Second Degree, a Felony, as charged in the information." The referred to information was *not* part of exhibit 3.

No other evidence was offered. The evidence was sufficient to prove appellant was convicted of second degree burglary, a felony. It was utterly insufficient to prove that the burglary appellant was convicted of concerned "an inhabited dwelling house" rather than a "shop, warehouse, store, mill, barn, stable, outhouse or other building. . . ." (§ 459.)

Ordinarily that would end the matter. It being undisputed that insufficient evidence supports the trial court's finding, we would simply reverse that finding. But the Attorney General, despite virtually conceding the *trial* death of the allegation, argues that, like Lazarus, it can be raised from that death.

This resuscitative feat, the Attorney General contends, may be accomplished either by appellate judicial notice[5] (Evid. Code, §§ 459, subd. (d), 452, subd. (d)) or appellate factfinding (Code Civ. Proc., § 909[6]). The reason, the Attorney General explains, is this: "[T]he issue here is not . . . the truth of the prior allegation, but rather the substantialness of the evidence relating to the nature of the prior, *which is a sentencing matter*. The probation report, which included hearsay evidence relating to appellant's admission to his probation officer, was submitted at such hearing and considered by the court. There was therefore evidence in the record to support the court's implied finding that appellant was previously convicted of burglary of a residence." (Italics added.)

The error of the Attorney General is fundamental. Contrary to his assertion, the issue *is* "the truth of the prior allegation." Appellant made it the

---

[5]On May 6, 1992, respondent requested this court to judicially notice certain documents in superior court case No. A014429, appellant's 1974 burglary conviction. On May 11, 1992, we granted that request. Yet to be determined is what effect, if any, should be given to the *judicially noticed* matters. (Law Revision coms., Evid. Code, § 459: "Having taken judicial notice of such a matter, the reviewing court may or may not apply it in the particular case on appeal. The effect to be given to matters judicially noticed on appeal, where the question has not been raised below, depends on factors that are not evidentiary in character and are not mentioned in this code.")

[6] The section reads: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

issue by his denial. Once denied, its truth had to be determined by *trial*, either jury or court. (§ 1025.)

Only if, *during trial*, substantial evidence of its truth was received and based upon that evidence, the trier of fact then found the prior allegation true, could it then become "a sentencing matter."

We decline to judicially notice (Evid. Code, § 459, subd. (d)) or factually find (Code Civ. Proc., § 909) that the subject prior burglary was "of an inhabited dwelling house." To do so would do "violence to the elementary principle that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to matters contained in the record of the trial proceedings." (*People* v. *Pena* (1972) 25 Cal.App.3d 414, 422-423 [101 Cal.Rptr. 804]; see also *People* v. *Hambarian* (1973) 31 Cal.App.3d 643, 662 [107 Cal.Rptr. 878] ["An appellate court may not on direct appeal from a judgment take judicial notice of or consider matters that were not considered by the trial court. . . ."]; *People* v. *Pearson* (1969) 70 Cal.2d 218, 221-222, fn. 1 [74 Cal.Rptr. 281, 449 P.2d 217]; *People* v. *Huntsman* (1984) 152 Cal.App.3d 1073, 1086-1087 [200 Cal.Rptr. 89]; *People* v. *Cowan* (1940) 38 Cal.App.2d 144, 153 [100 P.2d 1079] [Code Civ. Proc., § 956a, predecessor to § 909, applies only to civil not criminal cases]; *People* v. *Benford* (1959) 53 Cal.2d 1, 6-7 [345 P.2d 928]; *Tyrone* v. *Kelley* (1973) 9 Cal.3d 1, 13 [106 Cal.Rptr. 761, 507 P.2d 65].) Respondent cites no authority for the proposition that an essential element, not proved at trial, may be proved on appeal. *People* v. *Shaw* (1965) 237 Cal.App.2d 606 [47 Cal.Rptr. 96] and *People* v. *Bautista* (1970) 6 Cal.App.3d 344 [85 Cal.Rptr. 688], relied on by respondent, are inapposite.

3. *Appellant contends he is entitled to 178, not 177, days' custody credit.*

 The trial court awarded appellant 118 days' actual custody credit and 59 days' local conduct credit for a total of 177 days' custody credit.

Appellant contends, and respondent concedes, he was in local custody 119 not 118 days and accordingly should be credited with 178 total days' credit. But as respondent notes, and appellant does not thereafter contest, 119 actual custody days entitle appellant to only 58 local conduct days (*People* v. *Smith* (1989) 211 Cal.App.3d 523 [259 Cal.Rptr. 515]). Therefore, although the trial court made two mistakes in calculating appellant's custody credits, its total of 177 days was correct.

### DISPOSITION

The trial court's finding that appellant had been convicted of a serious felony, residential burglary, is reversed. The clerk is directed to modify the

abstract of judgment as follows: in part 3, ENHANCEMENTS, delete 1 of the 3 "667(A)" listed priors and change the total from 15 years to 10 years; in part 6, TOTAL TERM IMPOSED, change 20 years to 15 years; in part 9, change 118 (actual local time) to 119 and 59 (local conduct credits) to 58.

As modified, the judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied July 29, 1992, and appellant's petition for review by the Supreme Court was denied September 30, 1992.